UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MARTHA WALTHER, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> JOHN WOOD, *et al.*, <br><br> Defendants. | Case No. 1:23-CV-00294-GSL |

## OPINION AND ORDER

This matter is before the Court on the Motions for Judgment on the Pleadings [DE 130, 152] filed by Defendants, John Wood and Brian Eagle, on October 8, 2024 and November 22, 2024. Plaintiffs, Martha Walther, Trent Kumfer, Jayme Lea, Megan Kelsey, Dave Lowe, Carol Whisler, and Michele Porter (hereinafter collectively referred to as "Plaintiffs"), filed their Responses [DE 136, 161] on October 15, 2024 and December 20, 2024, and Defendants replied [DE 148, 164] on November 5, 2024 and January 8, 2025.  For the reasons set forth below, the Motions are **DENIED.**

### Background

On July 14, 2023, Plaintiffs, current and former employees of 80/20, Inc. ("80/20") initiated this lawsuit against Defendants John Wood ("Defendant Wood"), Brian Eagle ("Defendant Eagle"), Patrick Buesching, Patrice Mauk, Rodney Strack, MPE Partners II, L.P., MPE Partners III, L.P., and Pareto Efficient Solutions, LLC, alleging various violations of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq*. ("ERISA"). [DE 1]. The Complaint has since been amended, leaving the Second Amended Complaint ("SAC") [DE 63], filed on January 5, 2024, as operative.

In 1986, Donald Wood founded 80/20, a very successful aluminum manufacturing company, in Fort Wayne, Indiana. [DE 63, ¶ 1,3]. In 2016, in recognition of his employees' role in the success of the Company, Donald Wood created an Employee Stock Ownership Plan ("ESOP") to give his employees the opportunity to partake in 80/20's ownership. [*Id*. at ¶ 46-47]. As sole director of ESOP at the time, Donald Wood appointed Defendant Eagle, an Indianapolis attorney, as the independent trustee. [*Id*. at ¶ 47]; [DE 66-3]. This allowed Defendant Eagle to purchase, on behalf of ESOP, 10% of 80/20's shares that Donald Wood wished to sell initially. [*Id*. at ¶ 47]. By January 1, 2017, ESOP owned 10% of the Company. [*Id*.].

Around the same time, Donald Wood entered into an agreement with 80/20 titled, "Stock Purchase & Transfer Restriction Agreement" ("Buy-Sell Agreement"). [DE 63 at ¶ 53]; [DE 66-4]. That agreement opens with the following:

> Wood owns ninety percent (90%) of the issued and outstanding Shares as set forth [herein]; Wood desires that at the time of his death, any Shares not purchased from his estate by the ESOP or by one or more Independent Third Parties within a reasonable period of time following his death, shall be sold to the Corporation, and the Corporation shall be obligated to purchase such Shares[.]

[DE 66-4]. Section 2.01 of the Buy-Sell Agreement outlines how ESOP, or alternatively a third party, is to receive an offer to purchase:

> Upon the death of Donald F. Wood, Wood shall offer (in accordance with Section 6.01) to sell all or any portion of the Shares owned by Donald F. Wood at his death to the ESOP at the ESOP Purchase Price and upon the terms to be determined between Wood and the ESOP. The ESOP shall have one hundred eighty (180) days following the appointment of the personal representative of Donald F. Wood's estate within which to accept all or any part of the Shares so offered.

[DE 63 at ¶ 53]; [DE 66-4 at § 2.01(a)]. The shares may be offered to a third party following one of three triggering events: a closing of ESOP's purchase of any shares, written notice from ESOP that it does not desire to accept any shares, or the expiration of the 180-day offer period. [*Id*. at §

2

2.01(b)]. Regardless of the buyer, the proceeds of the sale would go to the residual beneficiary of Donald Wood's estate ("Estate"), which was his charitable foundation ("Foundation"). [DE 63 at ¶ 65].

In March of 2019, Donald Wood died. [DE 63 at ¶ 60]. At that time, two of 80/20's board members were also board members of the Foundation: Defendant Wood, chairman of 80/20 and the Foundation; and Patrick Buesching, 80/20's CEO and both a trustee and the treasurer of the Foundation. [*Id*. at ¶¶ 34, 36, 66]. Buesching was also the chairman of the Plan Committee, which included: Patrice Mauk, 80/20's CFO; and Rodney Strack, 80/20's executive director of sales. [*Id*. at ¶¶ 36-38]. Defendant Eagle remained ESOP's independent trustee. [*Id*. at ¶ 35].

Upon Donald Wood's death, the Estate and ESOP began preparing the sale of the Estate's shares of 80/20. [DE 63 at ¶ 64]. The Estate allowed the Foundation to direct the negotiations, as the Foundation stood to receive the proceeds of the sale. [*Id*. at ¶ 65]. Defendant Eagle, as trustee of the Plan, would represent the Plan in its purchase of the shares. [*Id*. at ¶ 70]. Defendant Eagle retained a valuation advisor, a necessary step for such a sale, eight months after Donald Wood's death. [*Id*. at ¶ 73]. This was two months after the 180-day deadline referenced in the Buy-Sell Agreement. [*Id*.]. So, at the time that Defendant Eagle retained the advisor, the Estate and the Foundation were considering opening the negotiations to third-party buyers. [*Id*.].

Even so, on December 31, 2019, Buesching, Mauk, and Strack, on behalf of ESOP, submitted to three different banks requests for proposals on how it could fund the purchase of the shares. [DE 63 at ¶ 74]. Though Defendant Eagle did not pursue additional funding options for ESOP's purchase of the shares, he created a commercially reasonable offer involving a seller's note from 80/20. [*Id*.]. Ultimately, the Estate and the Foundation rejected the offer in May of 2020. [*Id*. at ¶ 75, 78]. Defendant Eagle counteroffered, proposing that ESOP would only purchase a

3

controlling interest of the shares with the remainder being sold to a third party. [*Id*. at ¶ 79]. The Estate and the Foundation rejected that offer, too. [*Id*.].

The Estate hired a financial advisor to assist with sale to a third party. [DE 63 at ¶ 87]. Defendant Wood and Buesching were involved in the solicitation and negotiation of bids on behalf of the Estate and the Foundation. [*Id*. at ¶ 88]. Buesching, Mauk, and Strack were involved with the same, but on behalf of 80/20. [*Id*. at ¶ 89]. MPE Partners II and MPE Partners III emerged as the most serious third-party purchaser, seeking to purchase 100% of 80/20's shares. [*Id*. at ¶¶ 90-91]. Negotiations on the structure of the deal proceeded in earnest, but the Estate and Foundation solicited one more offer from ESOP in August 2020. [*Id*. at ¶ 93]. Defendant Eagle submitted a bid, relying on the seller's note as he did with the initial bid from earlier that year. [*Id*. at ¶ 94]. This offer was rejected. [*Id*. at ¶ 96].

Instead, the deal with the MPE entities moved forward, with Defendant Wood and Buesching approving an exclusivity agreement in October 2020. [DE 63 at ¶ 99]. Two months later, Defendant Wood and 80/20's board of directors removed Defendant Eagle as independent trustee of ESOP and reappointed him as a directed trustee with the limited authority to authorize 80/20's redemption of the 10% of shares owned by the Plan. [*Id*. at ¶ 101]. This was necessary for 80/20 to then sell 100% of the shares to the MPE entities. On February 24, 2021, both contracts were executed: the stock redemption agreement between the Plan and 80/20, and the sale of 80/20 to Pareto Efficient Solutions, a subsidiary of the MPE entities. [*Id*. at ¶ 114]. As part of the sale, ESOP released any rights and claims related to the sale, and it was then terminated. [*Id.* at ¶ 116].

On February 2, 2024, Defendant Eagle moved to dismiss the SAC [DE 65], and Defendants Buesching, Mauk, Strack, MPE Partners II, MPE Partners III, and Pareto Efficient Solutions jointly moved to dismiss the SAC [DE 68]. On September 30, 2024, the Court granted in part and

4

denied in part Defendants' Motions to Dismiss. [DE 125]. More specifically, the Court found that Plaintiffs failed to state any plausible claims against Defendants MPE Partners II, L.P., MPE Partners III, L.P., Rodney Strack, Patrick Buesching, Patrice Mauk, Pareto Efficient Solutions, LLC, and granted their Motion to Dismiss entirely, holding that Plaintiffs' claims rested on the assertion that they had a "right to purchase" the shares at issue, while the plain language of the codicil and Buy-Sell Agreement indicate they were only entitled to an *offer* to purchase them. [*Id.* at 11] (emphasis added). For the same reason, the Court found that Plaintiffs also failed to state a claim against Defendant Eagle as to all claims in the SAC except for Claim III under 29 U.S.C. 1104(a)(1). [*Id.*] The Court held, *inter alia*, that Plaintiffs have stated a valid claim against Defendant Eagle for fiduciary breach related to his role as Trustee of ESOP. [*Id.* at 12].

Defendant Wood did not file a Motion to Dismiss and instead filed his answer to the SAC on February 2, 2024. [DE 67]. On October 21, 2024, Defendant Eagle filed his Answer [DE 140] to the SAC. As stated above, Defendant Wood filed his Motion for Judgment on the Pleadings [DE 130] on October 4, 2024, and Defendant Eagle filed his Motion [DE 152] on November 22, 2024.

**Legal Standard**

Federal Rule of Civil Procedure 12(c) provides that a party may move for judgment on the pleadings "[a]fter the pleadings are closed but early enough not to delay trial." Fed. R. Civ. P. 12(c). Rule 12(c) motions are "governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *See Lodholtz v. York Risk Services Group, Inc.*, 778 F.3d 635, 639 (7th Cir. 2015). However, "federal courts are unwilling to grant a judgment under Rule 12(c) unless it is clear that the merits of the controversy can be fairly and fully decided in this summary manner." *TIG Ins. Co. v. City of Elkhart*, 122 F.Supp.3d 795, 800 (N.D. Ind. Aug. 7, 2015) (internal citation omitted).

5

In doing so, the Court only may consider "the [complaint and answer] and any exhibits attached thereto," *Wolf v. Riverport Insurance Company*, 132 F.4th 515, 519 (7th Cir. 2025), and will "accept the facts alleged in the complaint in the light most favorable to the plaintiffs, the non-moving party …" *Dixon v. Ford Motor Credit Company*, 2025 WL 1907297, at *1 (N.D. Ind. July 8, 2025) (citing *Guise v. BWM Mortg.*, LLC, 377 F.3d 795, 798 (7th Cir. 2004)); *see also Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (holding that a challenged claim will survive a Rule 12(c) motion only when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged") *and TIG Ins. Co.*, 122 F.Supp.3d at 800 (internal quotations and citations omitted) (explaining that a "[Rule 12(c)] analysis more closely resembles the summary judgment standard …" in that judgment on the pleadings will be granted where "the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law").

**Defendant Wood's Motion for Judgment on the Pleadings [DE 130]**

Defendant Wood's sole argument as to why he is entitled to judgment on the pleadings is because the Court found that Plaintiffs failed to state a claim against Defendant Patrick Buesching. [DE 130 at 1]. In Defendant Wood's 2 ½ page Motion, he does not cite any case law, let alone the legal standard for Rule 12(c), nor does he purposefully argue any facts. *See generally* [DE 130]. Instead, he claims that he is relying on the arguments set forth in his co-defendants' Motion to Dismiss filed eight months prior. [DE 130 at 1]; [DE 148 at 1].[1] Defendant Wood's Reply fares no better as it is primarily a direct copy and paste of several paragraphs of the SAC with very

---

[1] The Court notes that Defendant Wood failed to file a brief in support of his Motion for Judgment on the Pleadings as required by N.D. Ind. L.R. 7-1(b). Defendant Wood claims that because he is relying on his co-defendants' Motion to Dismiss, "there [i]s no reason for [him] to repeat [the arguments] rather than simply cite them." [DE 148 at 1].

6

minimal argument. *See* [DE 148]. Plaintiffs oppose Defendant Wood's Motion, highlighting his failure to develop any argument, cite legal authority, or explain reasons why he believes dismissal is warranted on his behalf, except for pointing to the Court's dismissal of Defendant Buesching. [DE 136, Pages 5-6].

The Court finds Defendant Wood's Motion troubling for several reasons. First, as stated above, a party may only move for a Rule 12(c) motion for Judgment on the Pleadings once pleadings are closed. Fed. R. Civ. P. 12(c). Here, Defendant Wood moved for judgment on the pleadings on October 8, 2024. [DE 130]. It was not until October 21, 2024, that Defendant Eagle filed his Answer to the SAC, closing the pleadings stage of this case. *See* [DE 140].

Next, Defendant Wood's Motion refers the Court to his co-defendants' briefs in support of their Motions to Dismiss filed 8 months prior. *See* [DE 130 at 1]; [DE 148 at 1]. In doing so, he asks the Court to apply those same arguments to him in lieu of reciting facts and making his own arguments. This is insufficient.

"[A]rguments that are underdeveloped, cursory, and lack supporting authority are waived." *Brockett v. Effingham County, Illinois*, 116 F.4th 680, 686 (7th Cir. 2024) (internal quotations and citations omitted). It is not the job of the Court to "figure out how Defendant's law applies to Plaintiffs' facts …" *Kratzker Farms Inc. v. Indiana Grain Buyers and Warehouse Licensing Agency*, 2022 WL 16578349, at * 3 (N.D. Ind. Nov. 1, 2022). Therefore, "[a]n argument presented without citation to authority or a substantive development need not be considered by a court." *Rose v. Birch Tree Holdings, LLC*, 2022 WL 3656986, at *6 (N.D. Ind. Aug. 25, 2022).

Defendant Wood had ample opportunity to join in on Defendant Buesching's Motion to Dismiss or file his own. Although the Complaint was amended several times in this case, Defendant Wood's alleged involvement has remained largely the same. *See generally* [DE 1, 47,

7

63]. It was not until the Court granted Defendant Buesching's Motion to Dismiss that Defendant Wood decided he would attempt to use the successful arguments made by Defendant Buesching and file the instant Motion.

Also, in their Response to Defendant Wood's Motion, Plaintiffs discuss in depth the alleged differences between Defendant Buesching's and Wood's fiduciary duties as it relates to ESOP. *See* [DE 136 at 6-14]. However, due his insufficient and underdeveloped Motion, the Court finds that it is not necessary to address Defendant Wood's Motion further. For all of these reasons, Defendant Wood's Motion for Judgment [DE 130] on the Pleadings is **DENIED**.

### Defendant Eagle's Motion for Judgment on the Pleadings [DE 152]

Defendant Eagle is asking the Court to enter judgment on the pleadings in his favor as to the one remaining claim against him, Claim III under 29 U.S.C. 1104(a)(1). He states that, after the Court's September 30, 2024 Order granting in part and denying in part his Motion to Dismiss, the only remaining issue to be decided is whether he "breached his fiduciary duties in delaying negotiations with the Estate beyond the 180-day deadline in the Buy/Sell Agreement for [ESOP] to accept any offer made by the Estate for the purchase of Don [Wood]'s shares." [DE 153 at 10. Before addressing this argument, the Court would like to note that Defendant Eagle's interpretation of its September 30, 2024 Order is incorrect.

The Court's September 30, 2024 Order states, in pertinent part, as follows:

> The SAC also alleges that the Plaintiffs' injury was a lost investment opportunity due to Defendant Eagle's dilatory conduct following Donald Wood's death. If Defendant Eagle was dilatory in taking steps to respond to the estate's offer to the Plan, and this delay brought the Plan's opportunity to purchase beyond the 180-day timeframe from the Buy-Sell Agreement, Plaintiffs have stated a claim for fiduciary breach. Based on the SAC, it appears that Defendant Eagle's fiduciary breach in that respect increased the probability that the Plan's purchase of any of the outstanding shares would be diminished …
> ***

8

> In sum, Plaintiffs have sufficiently plead that Defendant Eagle's conduct constituted a breach of fiduciary duties, and that there are equitable remedies this Court could order that would redress injury.

[DE 125 at 12]. In denying Defendant Eagle's request to dismiss Claim III of the SAC, the Court merely listed the allegation regarding the missed 180-day as a factual example of Plaintiffs' success in stating a claim under 29 U.S.C. 1104(a)(1). At that stage of the proceedings, the Court cannot, and did not, pick and choose which of Plaintiffs' factual allegations made Claim III, under 29 U.S.C. 1104(a)(1), viable against Defendant Eagle. "[A] motion to dismiss under Rule12(b)(6) doesn't permit piecemeal dismissals of parts of claims." *Signal Funding, LLC v. Sugar Felsenthal Grais & Helsinger LLP*, 136 F.4th 718, 724 (7th Cir. 2025) (internal quotations and citation omitted); *see generally Haug v. Bierly*, 2025 WL 2493986, at *4 (N.D. Ind. Aug. 28, 2025). Therefore, in order for the Court to grant Defendant Eagle's request for judgment on the pleadings, he must show, viewing the facts in a light most favorable to Plaintiffs,' that: 1) the facts do not support a cognizable legal theory of liability under 29 U.S.C. 1104(a)(1); and 2) there is issue of fact remaining. *Laborers Local 236 v. Walker,* 749 F.3d 628, 632 (7th Cir.2014); *TIG Ins. Co*., 122 F.Supp.3d at 800. Defendant Eagle has failed to do so.

Since Defendant Eagle only addresses Plaintiffs allegation that he missed the 180-day deadline to accept an offer on behalf of ESOP and ignores the remaining allegations[2] that support the surviving claim against him, his request for judgment on the pleadings fails and the Court's analysis could end here. However, since he spends numerous pages explaining that he was a

---

[2] Factual allegations in the SAC that support Claim III under 29 U.S.C. 1104(a)(1) include, but are not limited to: Eagle failed to make reasonable efforts to secure financing for the sale of the remaining stock, failed to negotiate ESOP's purchase of the Estate's shares of 80/20 stock in a diligent and prudent manner, ignored unlawful self-dealing and other fiduciary breaches by [Defendant Wood] that injured ESOP, and failed to negotiate compensation for ESOP in the MPE deal in a diligent and prudent matter. [DE 63 at ¶ 183].

directed trustee during the relevant time period, and therefore did not violate the 180-day deadline, the Court will address that now.

Defendant Eagle argues that he cannot be found liable for the remaining claim against him because he was "a directed – not discretionary – trustee for most of the extended 180-day time period." [DE 153 at 4]. And, since he was a *directed* trustee of ESOP, "he had no independent duty to investigate the merits of the directing fiduciary's instruction … and, in fact, was bound to follow the instructions of the ESOP Committee …" [*Id.* at 12] (emphasis added). He supports his argument by claiming that the documents incorporated by reference in the SAC show he was a directed trustee during the time in which Plaintiffs are alleging he breached his duty as trustee of ESOP. [*Id*. at 11].

Defendant Eagle lays out a timeline in his brief that states he was a discretionary trustee beginning on November 17, 2016, for ESOP's initial purchase of 10% of Don Wood's shares. [DE 153 at 11]. Then, on January 1, 2017, he converted to a directed trustee. [*Id*.] It was not until February 3, 2020, that he became a discretionary trustee again. [*Id*]. To support this timeline, he claims that the Court can rely on the November 2016 and February 2020 Engagement Agreements. [*Id*. at 2.][3]

Plaintiffs contend that Defendant Eagle was a discretionary trustee when he breached his fiduciary duty as trustee of ESOP. [DE 161 at Pages 7-14]. Additionally, they argue that Donald Wood's Trust Agreement is the governing document, rather than the 2016 and 2020 Engagement Agreements. [*Id*. at 9]. Defendant Eagle, while not referencing the Trust Agreement in his opening brief, insists that the Court must consider the Trust Agreement as well as the Engagement

---

[3] Defendant Eagle repeatedly mentions a document that proves his transition from discretionary trustee to directed trustee on January 1, 2017. However, he fails to cite to any document and the Court is unaware of such in the record. [DE 153 at 2].

10

Agreements in determining which type of trustee he was during the time in question. The Court agrees. [DE 164 at 2].

Donald Wood's Trust Agreement was created and executed in Indiana. [DE 66-3]. "Under Indiana law … the meaning of a trust instrument is a question of law, and the court's primary role is to discern the settlor's intent." *National Foundation for Special Needs Integrity, Inc. v. Reese*, 881 F.3d 1023, 1029 (7th Cir. 2018). In doing so, the Court is to follow the four corners rule, meaning "[i]f the instrument is clear, then the court will consider only its language." *Id.* If the language is ambiguous, "the text alone is not sufficient to decide the case," and the court may look beyond the Trust documents when construing it. *Id.* at 1030; *Lawson v. Sun Microsystems, Inc.*, 791 F.3d 754, 762 (7th Cir. 2015) (holding that "extrinsic evidence of the parties' intent is permitted only when the contract is ambiguous or uncertain in its terms, in which case the question of the parties' intent is one for the fact finder").

Donald Wood's Trust Agreement, effective December 1, 2016, while not explicitly defining the role of trustee as discretionary, it authorizes the trustee to, *inter alia*, "contract or otherwise enter into transactions between itself, as Trustee, and [80/20] or any Participating Employer or [80/20] shareholder for the purpose of acquiring or selling [80/20] Stock[.]" [DE 66-3 at 7]. The November 2016 Engagement Agreement states, in pertinent part, as follows:

> The Company desires to retain the Trustee to act as a "discretionary trustee" of the Trust for the Transaction, as herein defined, thereafter for valuing the shares of the Company owned by the Trust, and for all other matters as a "directed trustee" of the Trust.

[DE 153 at 2]. The February 2020 Engagement Agreement states, in pertinent part, as follows:

> The Company desires to retain the Trustee as a "discretionary trustee" in lieu of being a directed trustee of the Trust, and the Trustee is willing to serve as the discretionary trustee instead of as a directed trustee of the Trust for a certain proposed transaction with the Estate of Donald Wood, the majority shareholder of the Company (the "Estate"), to purchase a to-be-determined

11

> percentage of the Estate ownership of the Company and/or a possible redemption by the Company …

[DE 66-5 at 2]. The December 2020 Engagement Agreement states, in pertinent part, as follows:

> The Company desires to continue to retain the Trustee to act as a "directed trustee" under the Plan and Trust, and the Trustee is willing to serve as the directed trustee of the Trust for a certain proposed transaction regarding the sale of the Plan's 10% interest in the Company Stock together with the Estate of Donald Wood …

[DE 66-6 at 2].

Due to the obvious contradictions between the Trust Agreement and affiliated Engagement Agreements as to Defendant Eagle's status as trustee during the relevant time period, it would be contrary to law for the Court to make a finding at this point in the proceedings. See *Federated Mutual Insurance Company v. Coyle Mechanical Supply, Inc*. 983 F.3d 307, 313 (7th Cir. 2020) (directing district courts to deny motions for judgment on the pleadings unless "there are no material issues of fact to be resolved"). For this reason, and Defendant Eagle's failure to address any other factual allegation giving rise to Plaintiffs' surviving claim against him, his Motion is **DENIED**.

## Conclusion

It is hereby ordered that Defendants' Motions for Judgment on the Pleadings [DE 130, 152] are **DENIED.**

On October 22, 2024, per the parties' joint request, the Court temporarily stayed the discovery, and some briefing deadlines, in this case pending the resolution of Plaintiffs' Motion for Reconsideration [DE 144] and Defendant Eagle's and Wood's Motion for Judgment on the Pleadings. [DE 143]. The foregoing motions have now been fully decided. As a result, the Court **LIFTS** the temporary stay and **DIRECTS** Magistrate Judge Teel to set this matter for a Status Conference for the purpose of resetting discovery and briefing deadlines in this case.

Additionally, the Court notes that Plaintiffs filed a Motion to Certify Class [DE 109] on September 20, 2024. In light of the Court's September 30, 2024 Opinion granting in part and denying in part Defendants' Motions to Dismiss [DE 125], the Court's denial of Plaintiffs' Motion to Reconsider [DE 165], and now, the Court's denial of Defendants' Motions for Judgment on the Pleadings, the Court **DENIES** the Motion [DE 109] **without prejudice**, and **GRANTS** Plaintiffs' leave to refile such a motion, if they choose, consistent with the Court's findings.

**SO ORDERED.**

ENTERED: September 17, 2025

/s/ GRETCHEN S. LUND
Judge
United States District Court